UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v.   ) | NO. 1:21-CR-00603-RC-1 |
| ) | |
| CHRISTOPHER MICHAEL CUNNINGHAM ) | |
| ) | |

**SENTENCING MEMORANDUM**

Comes now Mr. Cunningham, through counsel, and requests that this Honorable Court sentence him to a three-year term of probation. He has reviewed the PSR with counsel and has no objections to the information included therein. Furthermore, he has reviewed the Sentencing Recommendation (D.E. 25) and agrees with the recommendation for term of three years probation.

**I.   IMPORTANT SENTENCING FACTORS**

In imposing a sentence, the court must consider the factors set forth in § 3553(a)(1)-(7). These additional factors include the nature and circumstances of the offense, the history and characteristics of the offender, the need to protect the public, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(1), (7).

**A.   The Nature of The Offense**

Mr. Cunningham acknowledges the seriousness of the event and now realizes the full impact of his actions, for which he is remorseful. An individualized assessment of his actions reveals several key factors in favor of probation. First and foremost, Mr. Cunningham did not engage in any acts of violence. He did not clash with police, and he was unarmed while in DC. Although he witnessed a shoving incident between an officer and other persons in the crowd, Mr. Cunningham did not assault law enforcement, nor did he encourage others to engage in violence. In fact, he did the opposite when he told others to stop.

Secondly, Mr. Cunningham had no intention on breaching the capitol when he left Tennessee on January 5, 2022. Furthermore, he is not a part of any group, association, or organization that traveled to the Capitol with plans of siege, treason, and violence.

Mr. Cunningham's entrance into the Capitol and actions while inside are also mitigating factors in favor of probation.  For example, Mr. Cunningham was not involved with the violent breach into the Capitol. The windows had been busted and the doors breached at least 7 minutes prior to his arrival. (PSR at ¶21) To be clear, Mr. Cunningham knew that he did not have permission to enter the Capitol, yet he entered anyway. He admits to being caught up in the moment and entering the Capitol through an open door. (PSR at ¶21) He simply points out that he played no leadership role into the breach and did not destroy property to gain entrance.

Clearly, Mr. Cunningham had no pre-planned agenda to thwart democracy. He possessed no weapons, tactical gear, maps, or any other items needed to overthrow the Government. Similarly, Mr. Cunningham had no plan or even sense of direction once inside. He followed the crowd through various areas.  While he remained inside for 1.5 hours, at no time did he commit acts of violence, destruction, vandalism, or theft. Furthermore, Mr. Cunningham did not participate with any groups who may have had sinister motives. According to Mr. Cunningham, "I went to DC figuring this would be my last chance to hear Trump speak as President…I had no idea that I would end up in the Capitol." Lastly, Mr. Cunningham admits to posting images of himself entering and walking through the Capitol. However, at no point did he steal or take any items as trophies.

B.     **History and Characteristics**

Mr. Cunningham experienced a difficult childhood. Although his needs were met, his family moved often to support his father's military career. (PSR at ¶53) For example, his family lived in Texas, Arizona, and Pennsylvania. (PSR at ¶54) To further complicate living arrangements, his mother suffered from schizophrenia, which resulted in Mr. Cunningham and his sister living in foster care for six years. (PSR at ¶53) As a ward of the state, Mr. Cunningham experienced isolation, separation anxiety, and all manner of abuse. (*Id.*)

Despite difficulties in foster care, Mr. Cunningham successfully completed high school. Mr. Cunningham explains, "I love to learn. I like learning about everything." While in middle school he enrolled in trade courses, which triggered his love of learning. Mr. Cunningham successfully earned an Associate's Degree in Mechanical Diesel Engineering from Nashville Auto Diesel College. (PSR at ¶61) He also studied Hotel Restaurant Management and some nursing. However, the Florida Health Institute put him out of the program due to his actions on January 6, 2021. (*Id.*)

Mr. Cunningham has a solid work history. For several years he has owned and operated Fidelity Roofing and Home Remodeling, which focuses on high end home remodeling projects. (PSR at ¶62) Mr. Cunningham also provides golf cart taxi services at music festivals and other outdoor events. He also put his education in Hotel Restaurant services to good use as an executive chef at Gaylord Hotel and Resort in Opryland." (*Id.*)

C.     **Promoting Respect for the Law**

A three-year term of probation is sufficient to promote respect for the law. In this instance, Mr. Cunningham has demonstrated respect for the law by speaking to law enforcement and the F.B.I. regarding his conduct on January 6, 2021. Furthermore, he quickly accepted

responsibility for entering the U.S. Capitol without permission. Mr. Cunningham's case was presented by Information on September 28, 2021 (D.E. 8) and fully demonstrated acceptance of responsibility by entering a plea a mere five months later February 15, 2022. (D.E. 22) Had there been an offer or fast track program, Mr. Cunningham would have reached an agreement early. Considering the timing of the filing of the information, arraignment, and discovery, it is hard to see how Mr. Cunningham could have pled guilty any sooner than he did.

When a person's circumstances or the nature of his offense warrant leniency, a sentence of probation can promote greater respect for the law than would be achieved by a prison sentence. As the Supreme Court explained in *Gall*, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *See Gall v. United States*, 552 U.S. 38, 48, 54 (2007) (quoting district court opinion with approval). The district court in *Gall* did "tak[e] into account the real conduct and circumstances" of the defendant and varied from an advisory guideline range of 30 to 37 months imprisonment to a sentence of 36 months' probation. *Id. at* 593.  In upholding the probation sentence, the Supreme Court explained that the district court had reached a "reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence [of probation]." *Id. at* 602.  Mr. Cunningham encourages the Court to reach the same conclusion and order a sentence of probation in his case.

### D.     Deterrence

Here, deterrence can be achieved more effectively with a sentence of probation than a sentence of incarceration. Although Mr. Cunningham has no prior felony convictions, he does have minor infractions related to his driving license, which would not result in criminal history

points under the Guidelines. Probation substantially restricts a person's liberty and thus constitutes a serious and meaningful consequence to criminal conduct. *See Gall v. United States*, 552 U.S. 38, 48 (2007).  "Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony[,] refrain from excessive drinking" and comply with other special conditions like drug testing or participation in drug treatment. *Id*. (citing U.S.S.G. § 5B1.3). Three years of probation is sufficient to deter Mr. Cunningham from future crimes while signaling to the public that such actions can result in serious restrictions on an otherwise free life.

> E. **The Need to Avoid Unwarranted Sentencing Disparities**

This Court must also impose a sentence that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as required by 18 U.S.C. 3553(a)(6). A three-year term of probation is consistent with other sentences that have been handed down for similarly situated persons involved in the riot at the Capitol. For example, other individuals who did not use violence, employ weapons, nor vandalize Government property have received non-custodial sentences of probation or probation with home detention. In fact, the majority of those already sentenced for this offense or similar offenses have received a non-custodial sentence.  Mr. Cunningham distinguishes himself from others who have received a sentence of incarceration. For example, David Mish, D.D.C. No. 21-cr-112(CJN) was sentenced to 30 days' incarceration in part because of his lengthy criminal history, which Mr. Cunningham does not have. Similalry, Jeremy Sorvisto, D.D.C. No. 21-cr-320 (ABJ) was sentenced to 30 days incarceration after attempting to destroy evidence of his

own participation. Rather than attempt to destroy evidence, Mr. Cunningham admitted his involvement to law enforcement. Thus, the requested sentence is consistent with the sentences imposed in other similar cases and will not produce unwarranted disparity.

### IV.    Conclusion

For all of the foregoing reasons, Mr. Cunningham respectfully requests that the Court impose a sentence of probation, which is sufficient to address the sentencing factors expressed in 18 U.S.C 3553(a).

Respectfully submitted,

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ (BPR#022278)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

Attorney for Christopher Michael Cunningham

### CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, I electronically filed the foregoing *Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Samuel Dalke, Assistant United States Attorney, 228 Walnut Street, Suite 220, Harrisburg, PA 17101.

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ